**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie La Mar, | No. CV-06-2550-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Department of Economic Security, Division of Child Support Enforcement, Systems Automation and Administration, | |
| Defendant. | |

Valerie La Mar ("Plaintiff") has raised Title VII claims against the Arizona Department of Economic Security ("Defendant") for race discrimination and retaliation. She has also raised claims under 42 U.S.C. §§ 1981, 1985, and 1988. Defendant has filed a Motion for Summary Judgment to dismiss these claims.[1]

---

[1] Defendant has moved for summary judgment on Plaintiff's Age Discrimination in Employment Act ("ADEA") claims. The Court presumes Defendant moved on age discrimination because of claims contained in the EEOC complaint. But Plaintiff made zero allegations regarding age discrimination in her Complaint (Doc. #1). She did not even list the statute in the Complaint. The Court finds that Plaintiff has made no allegations of age discrimination and that age discrimination is not an issue in this case.

## I. Background

Plaintiff, an African American female in her early forties, has been employed by Defendant since January 30, 1995. Plaintiff has been employed as a Management Analyst II ("MA II") since April 15, 1998. She alleges that she received inferior training compared to people of different races, and was therefore demoted on June 6, 2000. Plaintiff then filed an Equal Employment Opportunity Commission ("EEOC") complaint, and was subsequently reinstated in her former MA II position.

Plaintiff alleges that since then she has been the victim of retaliation, and that she has continued to be the subject of race discrimination by her employer. She claims that she has continued to receive inferior training, and that she has not been given the same workload as her peers have been given. She has allegedly had to implement projects with inferior resources compared to those of her coworkers.

In May of 2005, Plaintiff applied for a promotion to become a Management Analyst III ("MA III") and did not receive the position. She claims that she was more qualified than the non-African American candidates who did receive the jobs. All applicants were interviewed by a panel of three interviewers. Plaintiff claims that one of the interviewers on the panel was changed for her interview, thus subjecting her to discriminatory treatment.

Additionally, Plaintiff claims that she received a late performance review. She was also transferred to a different unit in order to be supervised by someone with whom it was known she did not get along. This supervisor allegedly imposed a rigorous deadline schedule on Plaintiff to which no other person in Plaintiff's position had been subjected. Plaintiff filed an additional EEOC complaint in 2005 alleging discrimination and retaliation in Defendant's promotion decisions. She noted in the complaint that no African Americans were currently employed as MA IIIs within the Department.

In May of 2006, Defendant hired an African American female to fill an MA III position. Plaintiff claims that this was done in response to her complaint in order to make it less credible. Finally, Plaintiff also alleges that she inquired about open MA III positions

- 2 -

1  in June of 2006, and was told that there were none available.  Soon thereafter, another
2  employee was promoted to MA III.

3  **II. Legal Standard**

4  Summary judgment is appropriate when "the pleadings, depositions, answers to
5  interrogatories, and admissions on file, together with affidavits, if any, show that there is no
6  genuine issue as to any material fact and that the moving party is entitled to summary
7  judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, summary judgment is mandated,
8  "...against a party who fails to make a showing sufficient to establish the existence of an
9  element essential to that party's case, and on which that party will bear the burden of proof
10 at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

11 Initially, the movant bears the burden of pointing out to the Court the basis for the
12 motion and the elements of the causes of action upon which the non-movant will be unable
13 to establish a genuine issue of material fact. *Id.* at 323.  The burden then shifts to the non-
14 movant to establish the existence of material fact. *Id.*  The non-movant "must do more than
15 simply show that there is some metaphysical doubt as to the material facts" by "com[ing]
16 forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.*
17 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P.
18 56(e)).  A dispute about a fact is "genuine" if the evidence is such that a reasonable jury
19 could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
20 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create
21 a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48.  However,
22 in the summary judgment context, the Court construes all disputed facts in the light most
23 favorable to the non-moving party.  *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir.
24 2004).

25 **III. Arizona Department of Economic Security as a Jural Entity**

26 Defendant argues for summary judgment on all of Plaintiff's claims because the DES
27 is not a jural entity and cannot sue or be sued in its own right.  Defendant cites a case from
28

- 3 -

1  1937 stating that a municipal corporation could not be sued for damage to private property, *Grande v. Casson*, 72 P.2d 676, 681 (Ariz. 1937), a case where a superior court was not capable of being sued, *Yamamoto v. Santa Cruz County Bd. Of Supervisors*, 606 P.2d 28, 29 (Ariz. App. 1979), and a case in which failure to join the State Board of Education as a party was not fatal error since it was not a party that could sue or be sued. *Kimball v. Shofsall*, 494 P.2d 1357, 1359 (Ariz. App. 1972).

The scant authority far from resolves this issue as a matter of Arizona law. In light of the fact that "we hold . . . pro se pleadings to a less stringent standard than formal pleadings prepared by lawyers," *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986), and that it does not appear that Defendant was prejudiced by the error (if any), the Court will not grant a motion the summary judgment on this basis.

**IV.  Plaintiff's Claims under 42 U.S.C. §§ 1981, 1985, 1988**

Defendant asserts that Plaintiff's claims under 42 U.S.C. §§ 1981, 1985, and 1988 (attorney's fees) should be barred under the Eleventh Amendment's doctrine of sovereign immunity. "Under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (internal citations omitted). "To determine whether a governmental agency is an arm of the state, the following factors must be examined: whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has the power to take property in its own name or only the name of the state, and the corporate status of the entity." *Id*. (internal citations omitted). "To determine these factors, the court looks to the way state law treats the entity." *Id*. (internal citations omitted).

Here, Plaintiff seeks to sue the Arizona Department of Economic Security. This is a statutorily created agency subject to full legislative control, and funded by state money. A.R.S. § 41-1951 *et. seq.*; *See id*. (sovereign immunity barred 42 U.S.C. §§ 1981, 1983, and

- 4 -

1985 claims against state colleges and universities, as they were subject to "full legislative control" and their budget was made up of funds received from state general fund); *see also Pittman v. Oregon*, 509 F.3d 1065, 1072 (9th Cir. 2007) (reaffirming that § 1981 claims cannot be brought against arms of the state). The DES is a true arm of the State of Arizona, and therefore is immune from suit under the civil rights statutes. Therefore, Plaintiff is barred from asserting her §§ 1981, 1985, and 1988 claims against the DES.

**V. Plaintiff's Title VII Claims**

    **A. Exhaustion of Administrative Remedies**

Civil actions under Title VII may not be commenced until a plaintiff has first filed a charge with the EEOC. 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(f). "The scope of a civil action alleging [employment] discrimination is limited by the charge filed with the EEOC." *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386 (9th Cir. 1990). This Court may consider, "any charges of discrimination that are like or reasonably related to the allegations made in the EEOC charge, or that fall within the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Deppe v. United Airlines*, 217 F.3d 1262, 1267 (9th Cir. 2000) (internal quotations and citations omitted). Further, "[t]he EEOC charge must be construed with the utmost liberality." *Id.* (internal quotations and citations omitted).

Here, Plaintiff filed an EEOC charge alleging race discrimination and retaliation regarding the DES's promotion practices. Defendant states that four of Plaintiff's allegations in her Complaint were never raised in the original EEOC charge. These claims are: (1) Plaintiff received a late performance review (Compl. ¶ 10.); (2) Plaintiff was placed under the supervision of someone with whom she did not get along (*Id.* at ¶ 11.); (3) Defendant retaliated against Plaintiff by hiring a black female to fill a position for which Plaintiff had applied (*Id.* at ¶ 12.); and (4) Plaintiff inquired about open MAIII positions, was told that there were none, yet shortly thereafter someone else was promoted to an MAIII position (Id. at ¶ 13.)

- 5 -

Construing the original EEOC charge with the utmost liberality, it appears that the new allegations are sufficiently related to the original charges. Plaintiff had stated in her charge that the DES was discriminating against her regarding their promotion practices. It seems that a reasonable investigation into a discriminatory failure to promote would entail an inquiry into the employee's performance evaluations and current work environment. It also seems likely that an investigation would look into the positions that the employee had applied for, and who was ultimately hired or promoted into those positions. Thus, Plaintiff's charges are not barred for failure to exhaust administrative remedies.

### B. Plaintiff's Evidence

Summary judgment motions on Title VII claims are typically evaluated by the burden shifting scheme set forth in *McDonnell Douglas*. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008); *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). Under *McDonnell Douglas*, the initial burden is on the plaintiff to establish a prima facie case of discrimination or retaliation. *Surrell*, 518 F.3d at 1106 (citing *Metoyer v. Chassman*, 504 F.3d 919, 931 n.6 (9th Cir. 2007)). If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a legitimate, non-discriminatory reason for the conduct. *Surrell*, 518 F.3d at 1106 (citing *Metoyer*, 504 F.3d at 931 n.6). If the defendant does this, the burden reverts to the plaintiff to show that the reasons offered by the defendant are pretextual. *Surrell*, 5018 F.3d at 1106 (citing *Dominguez-Currey v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005)).

#### 1. Title VII Discrimination Claims

##### a. Prima Facie Case

In order to establish a prima facie case of ongoing race discrimination, the plaintiff must show: (1) she is a member of a protected class; (2) she performed according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other employees with similar qualifications were treated more favorably. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (internal citations omitted).

- 6 -

In order to prevail on a claim of unlawful retaliation, a plaintiff must establish (1) that he engaged in a protected activity, (2) that he suffered an adverse employment decision, and (3) that there was a causal link between plaintiff's activity and the employment decision." *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002).

Here, Defendant concedes that plaintiff established a prima facie case in her Complaint as to the discrimination claims, with a few exceptions as noted below. Defendant additionally claims that the alleged actions occurred too long after the original EEOC complaint to be able to show the "causal link" between the complaint and the allegedly retaliatory actions.

### b. Legitimate Reasons for Employer's Actions

Plaintiff alleges in her Complaint eight[2] separate actions taken by defendant which were discriminatory: (1) plaintiff did not receive the same training, workload, and resources as her peers (Compl. ¶¶ 5-7.); (2) in May, 2005, Plaintiff was passed over for a promotion despite her allegedly superior qualifications (*Id.* at ¶ 8.); (3) when Plaintiff interviewed for the position, Defendant changed the interviewers on the interview panel thereby discriminating against Plaintiff (*Id.* at ¶ 8); (4) Plaintiff received an overdue performance review (*Id.* at ¶ 10.); (5) Defendant placed Plaintiff under the supervision of someone with whom she did not get along (*Id.* at ¶ 11.); (6) Plaintiff was subjected to a more rigorous deadline schedule than her peers (*Id.*); (7) Defendant hired a black woman to fill a position for which Plaintiff had applied, with the purpose of disproving Plaintiff's discrimination claims (*Id.* at ¶ 12.); and (8) Plaintiff inquired about an open MA III position, was told that there were none available, and soon thereafter a different employee was promoted to an MA III position (*Id.* at ¶ 13.)

---

[2] Plaintiff also raises new allegations in her Statement of Facts in Response to Motion for Summary Judgment. Because these allegations were not raised in her Complaint, the Court will not consider them.

### i. Allegation 1 - disparate training, workload, resources

Plaintiff alleges that her disparate treatment regarding her training opportunities, workload, and access to expert programmers was an ongoing set of occurrences throughout her employment experience. This is a potentially separate adverse employment action that Defendant has failed to address in its Motion for Summary Judgment. The Court cannot grant summary judgment on Plaintiff's claims regarding inadequate training, resources, and job responsibilities because Defendant has not moved for summary judgment on those claims.

### ii. Allegation 2 - May, 2005 failure to promote

Defendant claims that Plaintiff was not promoted due to her poor interview scores. All candidates for the position were interviewed by a three member panel, and Plaintiff received the lowest score out of all of the candidates interviewed from each of the three interviewers. These are legitimate, non-discriminatory reasons for not promoting Plaintiff. Thus, Plaintiff must now show that these reasons are pretextual. In order to show pretext by indirect evidence, "such evidence must be both specific and substantial." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)).

In her Response, Plaintiff does not cite to any evidence indicating that these proffered reasons are pretextual. Although Plaintiff does present a voluminous record[3] in support of her Statement of Facts, any evidence conceivably relating to pretext claims is in the form of her own unsworn general complaints in email form. While this may be evidence as to Plaintiff's feelings about her employer's motivations, nothing in them suggests that her

---

[3] Additionally, Plaintiff does not cite to the majority of this evidence in her Response. While Plaintiff is proceeding *pro se*, this does not impose a duty on the Court to "scour the record" in search of a potential factual dispute. "[T]he trial court is under no obligation to become an 'advocate' for or to assist and guide the *pro se* layman through the trial thicket." *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) (quoting *Jacobsen v. Filler*, 790 F.2d 1362, 1365 n.5 (9th Cir. 1986)).

- 8 -

employer's explanation of these events is in any way untrue. Therefore, these assertions are not the "specific and substantial" evidence required to establish pretext.

Plaintiff also claims that there is no possible way that she could have been granted a fair interview after she had filed the EEOC complaint. To accept this reasoning would impose *per se* liability for retaliation on any employer who failed to promote an employee after she filed an EEOC complaint, regardless of any compelling justification. In the absence of citations to any actual evidence showing that Defendant's motives were other than what they claim them to be, this reasoning alone is not enough to rebut Defendant's showing of legitimate, non-discriminatory reasons for its actions.

Therefore, summary judgment is granted as to this allegation.

### iii. Allegation 3 - interview panel changes

Defendant claims that one of the three members of Plaintiff's interview panel changed because the original interviewer had unexpectedly cancelled. This is a legitimate, non-discriminatory reason for Defendant's actions. Additionally, the replacement interviewer interviewed Plaintiff as well as seven of the other ten applicants, and the interviews were conducted in accordance with official hiring procedure. The interviewers all used the same pre-written questions for the interview, and assessed the answers to these questions against the same answer key, thus further diminishing any potential discrepancy. Again, Plaintiff cites to no counter-evidence to show that Defendant's alleged motives are pretextual. Therefore, summary judgment is granted as to this claim.

### iv. Allegation 4 - late performance review

Defendant claims that Plaintiff's performance review was late due to the fact that the person giving the review was behind on her workload. Plaintiff's review was one of five other reviews that were late. These reasons are legitimate and non-discriminatory reasons for the late review. Plaintiff cites to no evidence showing pretext, therefore summary judgment is grated as to this allegation.

#### v. Allegation 5 - change in supervisor

Here, Defendant claims that changing Plaintiff's supervisor to someone with whom she did not get along was not a true adverse employment action. "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Rather than protect individuals from all retaliatory actions, Title VII only protects individuals from those retaliatory actions that produce "significant" harm. *Id.* "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* In short, a challenged action is actionable for Title VII retaliation purposes only if a "reasonable employee" would have considered the action "materially adverse," which means that the action might have deterred "'a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Specifically, "personality conflicts that generate antipathy" and "snubbing by supervisors and co-workers" cannot constitute adverse action. *White*, 126 S. Ct. at 2415.

Here, although Plaintiff did not get along with her supervisor, the Supreme Court has made it quite clear that mere personality conflicts do not constitute adverse employment action. Plaintiff has failed to establish a prima facie case here, therefore, summary judgment is granted as to this allegation.

#### vi. Allegation 6 - more rigorous deadline schedule

Plaintiff claims that she was subjected to a more rigorous deadline schedule than her peers. Defendant neglected to mention this claim in its Motion for Summary Judgment. Because this claim is potentially a separate adverse employment action, and Defendant has not moved on it, the Court cannot grant summary judgment.

#### vii. Allegation 7 - hiring to refute allegations

It is unclear how exactly Plaintiff considers the hiring of an African American woman

- 10 -

into an open MA III position was an adverse employment action against Plaintiff. Defendant claims that Plaintiff was not interviewed for this job because she did not apply for it in time to be considered. The woman who was hired for the position responded to a March 2006 advertisement for the position. Plaintiff, on the other hand, responded to a notice posted in April 2006 that had an application cutoff deadline of May 5, 2006. The first round of interviews for the position concluded on May 4, 2006. None of the applicants who had responded to the announcement that Plaintiff responded to were interviewed for the position, since enough successful applicants were found through the May 4, 2006 interviews. This is evidence of legitimate and non-discriminatory reasons for Defendant's actions, and again Plaintiff cites to no evidence to counter this.

Plaintiff also appears to suggest that this woman was hired simply to discredit Plaintiff's claims that Defendant was discriminating against African Americans by not putting any in an MA III position. If this is indeed the crux of Plaintiff's allegation, then this is not a true adverse employment action in itself as Plaintiff suffered no direct injury as a result.

Therefore, summary judgment is granted as to this allegation.

### viii. Allegation 8 - inquiry about job openings

Plaintiff alleges that she asked her supervisor if there were any open MA III positions, and her supervisor told her that there were none. However, shortly thereafter, another person within the company was promoted to an MA III position. Defendant states that the person who filled this position was hired as part of the same interview cycle that produced the aforementioned African American female hire. Thus, it would appear that when Plaintiff inquired about the job openings in June, 2006, there were truly none available since the interviews for the open position had occurred on May 5, 2006. Since Plaintiff cites to no evidence that refutes this, summary judgment is granted as to this allegation.

## VI. Conclusion

Plaintiff has failed to cite to any specific evidence showing that her employer's

reasons for its actions were not what Defendant claims them to be.  However, Defendant has failed to address some of Plaintiff's allegations in its Motion for Summary Judgment.  Since "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion," *Celotex*, 477 U.S. at 2553, only partial summary judgment is granted.

Based on the Foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 16) is **GRANTED IN PART AND DENIED IN PART**.  Defendant's Motion is **DENIED** as to Plaintiff's allegations regarding her disparate workload and her lack of access to training opportunities and programming resources and is **GRANTED** in all other respects.

DATED this 11th day of July, 2008.

James A. Teilborg
United States District Judge