**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie La Mar, | No. CV06-2550-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Department of Economic Security, Division of Child Support Enforcement, Systems Automation and Administration, | |
| Defendant. | |

Pending before the Court is the Motion for Reconsideration or in the Alternative for Summary Judgment of Defendant, Arizona Department of Economic Security. (Dkt. # 29.) Plaintiff, Valerie La Mar, filed a response. (Dkt. # 31.) Defendant replied. (Dkt. # 38.) For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

**BACKGROUND**

**I.     Facts**

Plaintiff, an African American female in her early forties, has been employed by Defendant since January 30, 1995. Plaintiff has been employed as a Management Analyst II ("MA II") since April 15, 1998. She alleges that she received inferior training compared to people of other races, and was therefore demoted on June 6, 2000. Plaintiff then filed an Equal Employment Opportunity Commission ("EEOC") complaint, and was subsequently reinstated in her former MA II position.

1    Plaintiff alleges that since then she has been the victim of retaliation, and that she has

2 continued to be the subject of race-based discrimination by her employer. She claims that

3 she has continued to receive inferior training, and that she has not been given the same

4 workload as her peers have been given. She alleges she has had to implement projects with

5 inferior resources compared to those of her coworkers. Specifically, she alleges that she has

6 not received an equal or fair opportunity to work with "expert programmers" that would

7 allow her to work on more complex cases and expand her skills.

8    In May of 2005, Plaintiff applied for a promotion to become a Management Analyst

9 III ("MA III") and did not receive the position. She claims that she was more qualified than

10 the non-African American candidates who did receive the jobs. All applicants were

11 interviewed by a panel of three interviewers. Plaintiff claims that one of the interviewers on

12 the panel was changed for her interview, thus subjecting her to discriminatory treatment.

13    Additionally, Plaintiff claims that she received a late performance review. She was

14 also transferred to a different unit in order to be supervised by someone with whom it was

15 known that she did not get along. Plaintiff asserts that this supervisor imposed a rigorous

16 deadline schedule on Plaintiff to which no other person in Plaintiff's position had been

17 subjected. Plaintiff filed an additional EEOC complaint in 2005 alleging discrimination and

18 retaliation in Defendant's promotion decisions. She noted in the complaint that no African

19 Americans were currently employed as MA IIIs within the Department.

20    In May of 2006, Defendant hired an African American female to fill an MA III

21 position. Plaintiff claims that this was done in response to her complaint in order to make

22 it less credible. Finally, Plaintiff also alleges that she inquired about open MA III positions

23 in June of 2006, and was told that there were none available. Soon thereafter, another

24 employee was promoted to MA III.

25

26

27

28 **II.    Procedural History**

1    On October 16, 2007, Defendant filed a motion for summary judgment arguing that

2  all Plaintiff's claims should be dismissed.  (Dkt. # 16.)  In its Order, the Court construed[1]

3  Plaintiff's Complaint as alleging eight separate actions taken by the Defendant which were

4  discriminatory:

5              (1) plaintiff did not receive the same training, workload, and
             resources as her peers (Compl. ¶¶ 5-7.); (2) in May, 2005,
6              Plaintiff was passed over for a promotion despite her allegedly
             superior qualifications (*Id.* at ¶ 8.); (3) when Plaintiff
7              interviewed for the position, Defendant changed the
             interviewers on the interview panel thereby discriminating
8              against Plaintiff (*Id.* at ¶ 8); (4) Plaintiff received an overdue
             performance review (*Id.* at ¶ 10.); (5) Defendant placed Plaintiff
9              under the supervision of someone with whom she did not get
             along (*Id.* at ¶ 11.); (6) Plaintiff was subjected to a more
10             rigorous deadline schedule than her peers (*Id.*); (7) Defendant
             hired a black woman to fill a position for which Plaintiff had
11             applied, with the purpose of disproving Plaintiff's
             discrimination claims (*Id.* at ¶ 12.); and (8) Plaintiff inquired
12             about an open MA III position, was told that there were none
             available, and soon thereafter a different employee was
13             promoted to an MA III position (*Id.* at ¶ 13.).

14   (Dkt. # 26.)  On July11, 2008, the Court granted summary judgment on claims 2-5 and 7-8.

15  The Court declined to grant summary judgment on claims 1 and 6, as the Defendant had not

16  addressed these allegations in its motion.  (*Id.*)  Defendant explains its failure to address

17  claims 1 and 6 as being a result of variance between its interpretation and the Court's

18  interpretation of Plaintiff's Complaint.[2]  Because the Court was required to, and did, interpret

19  Plaintiff's complaint as broadly as possible, the Court identified some possible claims not

20

21         [1]In her complaint, *pro per* Plaintiff, La Mar, failed to enumerate her claims against

22  Defendant. Instead, Plaintiff's allegations of wrongdoing were described in narrative fashion
   in paragraphs 5-17.  This required the Court to construe the allegations asserted against

23  Defendant in the Complaint.

24         [2]Specifically, the Court construed the Complaint as stating a separate allegation

25  regarding disparate treatment in the context of training, work projects, and access to
   programers – claim 1.  Defendant construed these same allegations as part of Plaintiff's

26  failure to promote claim – claim 2.  (Dkt. # 29, at 1.)  Similarly, the Court construed the
   Complaint as stating a separate allegation in the context of the rigorous deadline schedule –

27  claim 6.  Defendant construed the rigorous deadline schedule as part of claim 5.  (*Id.* at 2.)

28

1    accounted for in Defendant's first motion for summary judgment. On July 25, 2008,

2    Defendant filed a motion for reconsideration or in the alternative for summary judgement.

3    (Dkt. # 29.)   Due to the extenuating circumstances present, the Court will address

4    Defendant's second motion for summary judgment.

5                                        **DISCUSSION**

6         Summary judgment is appropriate when "the pleadings, depositions, answers to

7    interrogatories, and admissions on file, together with affidavits, if any, show that there is no

8    genuine issue as to any material fact and that the moving party is entitled to summary

9    judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated

10   "against a party who fails to make a showing sufficient to establish the existence of an

11   element essential to that party's case, and on which that party will bear the burden of proof

12   at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

13        Initially, the movant bears the burden of pointing out to the Court the basis for the

14   motion and the elements of the causes of action upon which the non-movant will be unable

15   to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-

16   movant to establish the existence of material fact. *Id.* The non-movant "must do more than

17   simply show that there is some metaphysical doubt as to the material facts" by "com[ing]

18   forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.*

19   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P.

20   56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury

21   could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

22   242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create

23   a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However,

24   in the summary judgment context, the Court construes all disputed facts in the light most

25   favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir.

26   2004).

27        Summary judgment motions on Title VII claims are typically evaluated by the burden

28   shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

1    *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008); *Diaz v. Eagle Produce*

2    *Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  Under *McDonnell Douglas*, the initial

3    burden is on the plaintiff to establish a *prima facie* case of discrimination or retaliation.[3]

4    *Surrell*, 518 F.3d at 1106 (citing *Metoyer v. Chassman*, 504 F.3d 919, 931 n.6 (9th Cir.

5    2007)).  If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant

6    to show a legitimate, non-discriminatory reason for the conduct.  *Id.* (citing *Metoyer*, 504

7    F.3d at 931 n.6).  If the defendant does this, the burden reverts to the plaintiff to show that

8    the reasons offered by the defendant are pretextual.  *Id.* (citing *Dominguez-Currey v. Nev.*

9    *Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005)).

10         If the employer sufficiently articulates a nondiscriminatory reason, the plaintiff "must

11   produce evidence in addition to that which was sufficient for her *prima facie* case in order

12   to rebut the [employer's] showing."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th

13   Cir. 1998) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994)).  "[T]he

14   plaintiff must show that the articulated reason is pretextual 'either directly by persuading the

15   court that a discriminatory reason more likely motivated the employer or indirectly by

16   showing that the employer's proffered explanation is unworthy of credence.'"  *Villiarimo v.*

17   *Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *Chuang v. Univ. of Cal.*

18   *Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000)); *see Raad v. Fairbanks N. Star Borough Sch.*

19   *Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003); *Texas Dept. Of Cmty. Affairs v. Burdine*, 450

20   U.S. 248, 256 (1981).

21         **A.      Allegation 1 - Disparate Training, Workload, Resources**

22

23         [3]In order to establish a *prima facie* case of ongoing race discrimination, the Plaintiff
24   must show that: (1) she is a member of a protected class; (2) she performed according to her
     employer's legitimate expectations; (3) she suffered an adverse employment action;  and (4)
25   other employees with similar qualifications were treated more favorably.  *Godwin v. Hunt*
     *Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (internal citations omitted).  "In order to
26   prevail on a claim of unlawful retaliation, a plaintiff must establish (1) that he engaged in a
     protected activity, (2) that he suffered an adverse employment decision, and (3) that there
27   was a causal link between plaintiff's activity and the employment decision."  *Lyons v.*
28   *England*, 307 F.3d 1092, 1118 (9th Cir. 2002).

1      Plaintiff alleges that her disparate treatment regarding training opportunities,

2  workload, and access to expert programmers was an ongoing set of occurrences throughout

3  her employment experience.    In response, Defendant establishes the following facts

4  explaining Defendants conduct: (1) management analysts, like Plaintiff, who began working

5  with the Systems and Automation Administration group prior to 2004 did not receive formal

6  training, but rather were expected to learn on-the-job (Dkt. # 30, ¶ 39); (2) project assignment

7  depended on a multitude of factors including the management analyst's availability, the

8  analyst's expertise in a particular area, the analyst's track record, and the analyst's ability to

9  complete a project with little or no supervision or guidance (*Id.* at ¶¶ 40, 42); (3)

10  administrators within the Systems and Automation Administration do not unilaterally assign

11  projects; rather, this is a function of the Division of Technology Services (*Id.* at ¶ 41); (4)

12  Plaintiff has worked on more projects with "expert programers" than some Caucasian and

13  Hispanic analysts (*Id.* at ¶ 50); and (5) Plaintiff was not assigned large projects because,

14  based on observation and evaluations, Plaintiff is not qualified to be assigned such jobs (*Id.*

15  at ¶¶ 40, 42).

16      Based on this evidence, Defendant has established legitimate, non-discriminatory

17  reasons for the lack of formal training given to Plaintiff and for assignment distribution

18  methodology.    Thus, Plaintiff must now show that these reasons are pretextual.    Plaintiff

19  provides no direct evidence showing that Defendant's conduct was based on a discriminatory

20  motive. *See Godwin*, 150 F.3d at 1221   ("When the plaintiff offers direct evidence of

21  discriminatory motive, a triable issue as to the actual motivation of the employer is created

22  even if the evidence is not substantial.").[4]  In order to show pretext by indirect evidence,[5]

23

24      [4]Direct evidence is evidence which, if believed, proves discriminatory motive without
25  inference or presumption. *See Godwin*, 150 F.3d at 1221.

26      [5]To establish pretext, the plaintiff may also offer "circumstantial evidence that tends
27  to show that the employer's proffered motives were not the actual motives because they are
   inconsistent or otherwise not believable." *Godwin*, 150 F.3d at 1222. Indeed, "once the
28  employer's justification has been eliminated, discrimination may well be the most likely

1    "such evidence must be both specific and substantial." *Villiarimo*, 281 F.3d at 1062 (citing

2    *Godwin*, 150 F.3d at 1222).

3           In her Response, Plaintiff does not cite to any evidence indicating that Defendant's

4    proffered reasons are pretextual.  Plaintiff initiates her argument by pointing to the fact that

5    on-the-job training was acquired by working with expert programmers and that certain

6    individuals (Sierra Rose, Leisa Bell, John Asher, Lisa Faison and Teresa Coffman) worked

7    with expert programmers more often than Plaintiff.  Even if this is true, the preferential

8    assignments given to these individuals do not cast doubt on Defendant's proffered non-

9    discriminatory explanation for how assignments are distributed.[6]  Indeed, Plaintiff does not

10   dispute the facts established by Defendant showing Plaintiff was assigned to work with

11   experts more frequently than some Caucasian and Hispanic colleagues, and two African-

12   American colleagues were assigned to work with expert programmers more frequently than

13   many of the Caucasian or Hispanic analysts. Plaintiff's attempt at casting doubt on

14   Defendant's proffered explanation is limited to simply arguing that if "race was not a

15   significant factor, then what was the reason for the disparate training?"  (Dkt. # 38, at 2.)

16   This is not the specific and substantial evidence required to show pretext, as mere conjecture

17

18   ────────────

19   alternative explanation, especially since the employer is in the best position to put forth the
     actual reason for its decision." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 134

20   (2002).  Thus, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that
     the employer's asserted justification is false, may permit the trier of fact to conclude that the

21   employer unlawfully discriminated." *Id.* at 148; *see Raad*, 323 F.3d at 1194 ("In *Reeves*[,]

22   . . . the Court held that the factfinder may infer 'the ultimate fact of intentional
     discrimination' without additional proof once the plaintiff has made out her *prima facie* case

23   if the factfinder rejects the employer's proffered nondiscriminatory reasons as

24   unbelievable."); *Chuang*, 225 F.3d at 1127.

25           [6]Notably, in the Complaint after alleging discrimination on the basis of race with
     respect to training/assignment distribution, Plaintiff states, "Plaintiff asked for big projects

26   but did not receive them as the Defendant assigned bigger projects to their friends and close
     associates."    (Dkt. # 1, at ¶ 7.)    Even in her Complaint, Plaintiff asserts that

27   training/assignment distribution was done on the basis of friendship and not on the basis of

28   race.

- 7 -

1   on the part of Plaintiff is not enough.  *Villiarimo*, 281 F.3d at 1062 (citing *Godwin*, 150 F.3d

2   at 1222).

3          Ironically, Plaintiff also seeks to rebut the assertion that she is not qualified to be

4   assigned "big jobs" by setting forth a number of "complex" assignments that Plaintiff has

5   completed.  (Dkt. # 38, at 3.)  If this is indeed true, this evidence appears to contradict the

6   very claim of disparate treatment in assignment distribution.

7          In sum, the evidence Plaintiff cites simply does not rebut the reasoning set forth by

8   Defendant as to how assignments are distributed to the analysts.  If anything, Plaintiff's

9   arguments and evidence show only her feelings about her employer's motivations while

10  nothing in them suggest that her employer's explanation of the events is in any way untrue.

11  Therefore, summary judgment is granted as to this allegation.

12          **B.      Allegation 6 - More Rigorous Deadline Schedule**

13         Plaintiff claims that she was subjected to a more rigorous deadline schedule than her

14  peers based on her race.  Defendant's explanation is based on the following facts: (1)

15  management analysts are often assigned projects with deadlines that are simultaneous or

16  overlap (Dkt. # 30, ¶ 53); (2) three other members of the Rose team besides Plaintiff had

17  back-to-back or simultaneous deadlines during the period of time Plaintiff was supervised

18  by Sierra Rose (*Id.* at ¶ 54); and (3) back-to-back or simultaneous deadlines are not unusual

19  as shown by deadlines of other analysts assigned to other supervisors (*Id.* at ¶ 55).

20         Based on this evidence, Defendant has established legitimate, non-discriminatory

21  reasons for the rigorous deadline schedule to which Plaintiff was subject while working

22  under Sierra Rose. Thus, Plaintiff must now show that these reasons are pretextual. Plaintiff,

23  however, makes no attempt to refute any of the facts or reasoning cited by Defendants.

24  Plaintiff merely attempts to rehash issues foreclosed when the Court granted summary

25  judgment on claim 5.

26         Therefore, because Plaintiff fails to cite any specific and substantial evidence to show

27  pretext, the Court grants summary judgment as to this allegation.

28                                    **CONCLUSION**

1      **IT IS HEREBY ORDERED** granting Defendant's Motion for Summary Judgment

2   (Doc. # 29).

3      **IT IS FURTHER ORDERED** that the Clerk of the Court shall terminate this action.

4           DATED this 25th day of September, 2008.

5

6

7

8

9

10

11

12

13                                    G. Murray Snow
                                    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28